MR. JUSTICE SHEEHY,
dissenting:
I dissent in this case where the Workers’ Compensation Court completely missed the point it should have decided, and now this Court has missed it too.
The point to be decided is this: Is Delbert Snyder now totally disabled from a compensable industrial accident which occurred on or about January 6, 1982? Unequivocally, the answer should be yes.
To begin with, the employer in Montana takes the physical condition of his employee, as he finds it. If the physical condition of the employee is fragile, from whatever cause, susceptible to injury and aggravation, the risk is on the employer. It is the compensable injury, regardless of the physical condition of the worker at the time, *204 and the direct results of the compensable injury that determine the worker’s right to compensation benefits. Gaffney v. Industrial Accident Board (1955), 129 Mont. 394, 287 P.2d 256.
In January, 1982, Delbert Snyder was in fragile physical condition. He got that way from more than 35 years of hard labor working for the Anaconda Company. When he was 20 years old, he went to work for the Anaconda Company as a contract miner for about two years, when he went into the armed services. Upon his return from the service, in 1946, he returned to the Anaconda Company except for a short stint at Hanson Packing Company.
His first industrial accident at the Anaconda Company occurred in 1943. As he was coming up the Belmont Mine shaft, at the 3,800 foot level, something he could not identify hit him and he was rendered unconscious. He suffered a neck injury, was in the hospital, and his neck was “put in restriction” for a couple of weeks.
In 1958, working as a contract miner in the Leonard Mine, he was involved in an underground cave-in. His left leg was broken between the knee and the ankle; he lost two toes, his middle toe is a hammer toe, his toe next to the big toe is stiff, and his big toe is the only usable toe on his left foot. He was off work with these injuries for 16 months. Ever since he has walked with a slight limp. At the site of the leg fracture he has developed osteomyelitis for which he must wear a metal shield to avoid bumping.
In 1960, as he was employed as a shovel oiler by the Anaconda Company, he and a fellow worker were attempting to move the shovel which required the operation of a lever. Because the machinery was partly worn, the lever did not work properly and they extended the length of the lever by covering it with a 4-foot length of 2-inch pipe. As they shoved and pulled this lever, the machine kicked the lever out, and Delbert was struck on the chest, and suffered two broken ribs.
The last occasion prior to his final injury was when he was riding a bus supplied by the Anaconda Company to transport employees into the pit area. It was raining and the road had been changed. The bus driver got confused, took a wrong turn and drove the bus into a 10-foot deep ditch. Delbert Snyder was rendered unconscious, and when he came to found himself sitting on the back of the seat immediately in front of him with his left leg twisted under him. He had slit open his left leg over the old break.
Delbert Snyder eventually became a shovel operator. This is a job for a strong back. The shovel itself constantly vibrates and rattles. *205 The teeth of the shovel must frequently be changed, and the teeth are heavy. Many parts of the machine have to be repaired or replaced and require heavy lifting. In the fall of 1981, Delbert Snyder found it necessary to seek treatment from Dr. James B. Mossman, for the condition of his back. Dr. Mossman testified that Delbert Snyder’s back had deteriorated from the constant assaults upon his body of micro-traumas. A doctor, employed by the Anaconda Company in May, 1982, to examine Delbert’s back, Dr. Charles Buehler, found that Delbert had sustained marked degenerative changes in the lumbar spine due to osteoarthritis, and that the condition had existed for at least a year and perhaps more. He also found osteomyelitis of the left leg. Dr. Buehler testified that the same person, a year earlier in May, 1981, if Dr. Buehler had examined him then, would have been restricted in any attempt to perform certain functions because of his diffuse arthritis throughout his spine. With respect to his osteomyelitis, he would also have had restrictions because of the danger of the left leg being refractured.
Thus, Delbert Snyder, in January, 1982, was unknowingly awaiting the inevitable, literally, the straw that would break the camel’s back. It occurred when he was put to work on a new shovel for which the Anaconda Company had changed the seat cushion. The result of the change was that to work the levers which turn the shovel left or right, Delbert had to stretch his legs and twist his body in order to operate the levers. Delbert knew he was being hurt, but he finished his shift and brought the matter to the attention to the foreman. On the next day when he reported to work, the cushion had not been changed as promised, and he refused to go back on the shovel. His low back bothered him so that he was examined again by Dr. Moss-man whose report of the incident, dated January 6, was found in Dr. Mossman’s records and noted by the Workers’ Compensation Court in finding No. 13 in its first decision of October 11, 1985:
“How accident occurred: had been having minor problem with low back — used new seat and shovel and low back went out causing extreme pain.”
Delbert Snyder had worked his last shift for the Anaconda Company. He saw Dr. Mossman on several occasions through the summer and early fall of 1982 when his condition appeared to stabilize, but he was never again in condition to return to work.
On December 28, 1982, Delbert Snyder was involved in an automobile accident, where his neck and back sustained injuries. When his case came before the Workers’ Compensation Court, the argument *206 was then made by the Anaconda Company that his condition was a result of the car accident, and not of a compensable injury. The Workers’ Compensation Court rejected this contention, holding on October 11, 1985 in paragraph 2 of its conclusions of law:
“. . . here the evidence clearly establishes that claimant was being treated for back problems prior to January, 1982. Nonetheless, Dr. Mossman specifically noted in his deposition that claimant had new symptoms resulting from his having to work on a new shovel with different physical requirements. This evidence coupled with the claimant’s testimony establishes by a preponderance that the claimant’s condition was aggravated by the shift he worked on the Buyrus Erie shovel.”
The Workers’ Compensation Court ordered the Anaconda Company to pay temporary total disability benefits and medical benefits to Delbert from January 6, 1982 to December 28, 1982. The court said it was not in a position to speculate as to whether there was any additional temporary total disability due because of lack of evidence in the cause.
The matter returned to the Workers’ Compensation Court on claimant’s petition that he was totally disabled, and entitled to total disability benefits until he reached age 65, and thereafter to permanent partial disability benefits. The Anaconda Company produced no new medical evidence of its own. The only practitioner to testify was a chiropractor, Dr. Mossman, against whom counsel for the Anaconda Company continually contended that since he was not a medical doctor he could not give an opinion as to the status of the injuries and condition of Delbert Snyder, and thus succeeded in downgrading Dr. Mossman’s testimony before the Workers’ Compensation Court. Entering its findings and conclusions against Delbert Snyder on July 16, 1987, the Workers’ Compensation Court used selected portions of Dr. Buehler’s testimony from his examination in May, 1982, and from Dr. Mossman’s cross-examination of December 10, 1986, to determine:
“. . . we do not find sufficient evidence to support the claim. It is difficult to believe that a non-traumatic incident such as awkward posture could result in the extensive disability being claimed. In our prior order, we awarded just under a year’s worth of total disability benefits. At that time claimant was in an auto accident, which by its very nature is more traumatic. Though claimant tries to emphasize the physical complaints of the auto accident as being primarily to the upper back, there is no question that the low back was also af *207 feeted acutely. Dr. Mossman is simply unable to sort out the post-injury, pre-auto accident condition to the post-auto accident complaints to persuade the court that additional benefits are owed. Additionally, claimant has been in yet another accident after the trial. Claimant appears to have some permanent disability as a result of his January 1982 injury. On the record before us, however, it is not possible to determine the extent of that disability under these facts. Claimant is clearly not totally disabled because of the January, 1982 injury . . .” (Emphasis supplied.)
As we said, the point of Delbert Snyder’s claim is that his compensable injury of January 6, 1982, resulted in his total disability and that since January 6, 1982, he has been and is now totally disabled. The fact that he had two automobile accidents in the intervening time, out of which he sustained significant injuries, does not change the fact that he still is in the same condition now that he was in September-December, 1983, before the first accident. He was and is totally disabled. The automobile accidents are irrelevant.
Dr. Mossman testified:
“Q: With respect to time, Doctor, we are talking about the time period covered in the reports that you just described from, say, September to December of 1983 generally. A: During that time in this stabilized period, Mr. Snyder was still primarily incapable of active employment as such. (An objection was made at this point, on which the Workers’ Compensation Court did not rule.)
“A. Mr. Snyder’s condition at that point precluded him from lifting anything excessive probably 25 lbs., especially from the floor, bending and lifting; especially twisting and lifting would not be advisable. We suggested to him to stay away from any type of consistent vibration, which seems to have brought on the chronic'problem earlier of the micro-traumatic exposure.
“Beyond that, any type of consistent reaching overhead would have been somewhat difficult for him also. Such as, if you would like an expansion on that, such as maybe electric work overhead which he might do in a remodeling situation or something where he would be reaching with his head up or his arms up. That would have been difficult for him because of the neck problem also.”
As to Dr. Mossman’s “release” of Delbert following the automobile accident, Dr. Mossman testified:
“A. There are many forms of ‘release’ in our practice. We use release asymptomatic, which means release without symptoms; re *208 leased pre-clinical, which means generally speaking, released in the condition [sic] of the patient was prior to the previous injury or to that injury. We may also release with residual, which means they have an underlying problem still but that it may have reached maximum healing and we don’t expect it to make any major change one way or the other.
“In Del’s case, I believe, I released him in a pre-clinical condition, which relates back to the condition he was in prior to the auto accident.” (Emphasis supplied.)
The clear import of Dr. Mossman’s testimony is that the automobile accident made no change in the condition of Delbert Snyder. He was unable to work before the accident; he is unable to work after the accident. The responsibility for his total disability necessarily falls on the Anaconda Company.
The second automobile accident occurred on December 31, 1986, after the second hearing but before the decision of the Workers’ Compensation Court. It also occurred while Delbert was and remains totally incapacitated. Nothing in the evidence indicates any change in that condition.
The Anaconda Company offered no “medical” evidence to controvert the testimony of Dr. Mossman.
There you have it. The same Workers’ Compensation Court that found a compensable injury on January 6, 1982, and awarded Delbert Snyder nearly a year of total disability resulting therefrom, now refers to the incident as “non-traumatic,” and inconsistent with total disability. In so doing, the Workers’ Compensation Court ignores substantial evidence in the record from Dr. Mossman establishing that Delbert Snyder was totally disabled in December, 1982, when the automobile accident occurred, and is totally disabled now. There is no question of credibility involved here. Since all the medical evidence is by deposition, we are in as good a position to judge thereof as is the Workers’ Compensation Court.
Delbert Snyder has become an industrial throw-away. Like hundreds, nay thousands of other workers, the Anaconda Company used his youth and his strength until he was worn out, assaulted him with a compensable injury, and now he is assigned to the scrap-heap. As a Court, do we dare to call ourselves enlightened?
I would reverse with directions to the Workers’ Compensation *209 Court to award Delbert Snyder all available benefits based on his total disability since January 6, 1982.
MR. JUSTICE HUNT joins in the foregoing dissent of MR. JUSTICE SHEEHY.